Not for Publication

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **KIMBERLY LAZAR,**<br><br>                      **Plaintiff,**<br><br>      v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>                      **Defendant.** | Civil Action No. 19-5774 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on the appeal by plaintiff Kimberly Lazar ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and considered the matter without oral argument pursuant to L. Civ. R. 9.1(b). For the reasons that follow, the decision of the Commissioner is affirmed.

**I.      PROCEDURAL HISTORY**

Plaintiff sought disability insurance benefits and supplemental security income, alleging an onset date of February 1, 2012. Her claim was denied on July 22, 2015 and again denied on reconsideration on October 5, 2015. (D.E. No. 6, Administrative Record ("R."), at 12). Plaintiff then requested a hearing which took place of December 4, 2017. (*Id.*). On February 9, 2018, Administrative Law Judge ("ALJ") Leonard Costa issued an opinion, finding that Plaintiff was not disabled within the meaning of the Act. (R. 12-21). The ALJ's decision is the final decision of the Commissioner for purposes of appeal.

## II. LEGAL STANDARD

### A. Standard of Review

The Court's review of purely legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The Court reviews an ALJ's application of the law *de novo* and all other findings for "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*Id.*) When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). Under Third Circuit law, an ALJ need not "use particular language or adhere to a particular format in conducting his analysis," provided "there is sufficient development of the record and explanation of findings to permit meaningful review." (*Id.* at 505).

### B. The Five-Step Process: Determining Entitlement to Social Security Benefits

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520 & 416.920. At the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b) & 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments,

is "severe." *Id.* §§ 404.1520(c) & 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment or impairments, the Commissioner at step three determines the impairment or impairments (standing alone or in combination) meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If the claimant's impairments are found to be severe, the analysis ends and she is automatically eligible to receive benefits; if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d) & 416.920(d).

Before step four, the Commissioner must first determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *Id.* §§ 404.1520(e) & 416.920(e). In doing so, the Commissioner must consider all of a claimant's impairments, including those that are not severe.

At step four, the Commissioner decides whether the claimant retains the RFC to perform past relevant work. *Id.* §§ 404.1520(e)–(f) & 416.920(e)–(f). At each of these first four steps, the claimant bears the burden of proof. If the plaintiff lacks the RFC to perform any work he had done in the past, the analysis proceeds to step five.

At the final fifth step, that burden shifts to the Social Security Administration to produce evidence that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g) & 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

    **C.**    **ALJ Costa's February 9, 2018 Decision**

At step one, ALJ Costa found that Plaintiff has not engaged in substantial gainful activity since the alleged disabling onset date—February 1, 2012. (R. at 14). At step two, the ALJ determined

that Plaintiff suffered severe impairments: schizoaffective disorder, anxiety, and panic attacks. (*Id.*).

Then, at step three, when considering these impairments singly or in combination, the ALJ found they did not meet or equal the criteria for Listings 12.04 and 12.06. Specifically, in areas such as understanding, remembering, or applying information, the ALJ found that Plaintiff only suffered a moderate limitation, but no issues with tasks such as problem solving and memory. (R. at 15). The ALJ opined that the record was "devoid of any ongoing or consistent limitations in [Plaintiff's] ability to adhere to social norms," but, nonetheless, considered Plaintiff's "isolation" and trouble interacting with others to amount to moderate limitations. (*Id.*). ALJ Costa also assigned Plaintiff a moderate limitation in other cognitive areas such as concentration, persistence, maintaining work pace. (*Id.*). The ALJ found that Plaintiff had a moderate limitation with regard to concentrating, persisting, and maintaining pace because Plaintiff attended online college courses and because her mental status examinations revealed a "anxious/dysphoric mood with adequate thought process, full orientation, adequate impulse control and satisfactory performance on a cognitive examination[.]" (*Id.*). Looked at collectively, Plaintiff's mental impairments, according to the ALJ, did not cause two or more "marked" limitations or a single "extreme" limitation, of the required "paragraph B" criteria for a Listing. (*Id.*). ALJ Costa then determined that Plaintiff did not meet "paragraph C" criteria, reasoning that the medical evidence failed to establish that Plaintiff "has achieved only marginal adjustment as she takes care of herself without the need for outside assistance." (R. at 16).

As to Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing a "full range of light work at all exertion levels" but with several limitations. (R. at 16). Those limitations included occasional interactions with co-workers and supervisors" but could no interaction with the public. (*Id.*). The ALJ's also gave several reasons why Plaintiff's claims as to the nature, intensity, persistence, and limiting effects of her symptoms were not consistent with "medical signs, laboratory

findings and/or other evidence of the record". (R. at 16–17). Those inconsistencies noted by the ALJ included Plaintiff's ability care for herself and her cat, her ability to take college courses, her "essentially routine" and conservative treatments for mental impairments, the lack of "non-conclusory opinions" from treating physicians, and other evidence in the medical record. (R. at 18).

Ultimately, the ALJ found that Plaintiff was unable to perform her past relevant work as a medical secretary—considered skilled work under Dictionary of Occupational Titles 201.362-014—because the position's demands exceeded Plaintiff's RFC. (R. at 19). At step five, the ALJ determined that occupations existed in significant numbers within the national economy that Plaintiff could perform. Among those positions were Inspector and Hand Packager, Photocopying Machine Operator, and Sealing and Cancelling Machine Operator. (R. at 20). The ALJ concluded that Plaintiff not disabled within the meaning of the Act.

### III.   DISCUSSION

Plaintiff's requests that this Court reverse the Commissioner's final decision and order that benefits be paid. (D.E. No. 14 ("Pl.'s Br.") at 10). Alternatively, Plaintiff asks the Court to vacate the ALJ's decision and a remand for a new decision arguing, fundamentally, that the RFC determination was not based on substantial evidence because it ignored or rejected opinions from treating physicians. (*Id.*) The Commissioner responds that the ALJ's decision to accord treating sources' opinions little weight and his finding that Plaintiff is not disabled is supported by substantial evidence.

#### A.   The RFC Determination and Consideration of Opinion Evidence

In arguing that the ALJ committed reversible error at step four, Plaintiff contends that the ALJ failed to give treating sources the appropriate consideration. In support of her argument, Plaintiff claims that the ALJ failed to address a November 2017 letter from Plaintiff's treating psychiatrist,

Dr. Mayer. (Pl.'s Br. at 22–23). She also argues the ALJ erroneously accorded little weight to the opinions provided by treating physician Dr. Mayer and social worker Sarah Kershner. (*Id.*) Plaintiff alleges that the ALJ did not rely on sufficient contradictory evidence in rejecting these sources. (*Id.* at 23–28).

The RFC states that Plaintiff "could perform a full range of work at all exertional levels" but with certain non-exertional limitations that included "no exposure to extremes in environmental conditions or concentrated pulmonary irritants; no contact with the general public, "yet occasional interaction with co-workers and supervisors with the ability to understand, remember and carry out simple instructions with only occasional changes to essential job functions and the ability to make simple work-related decisions." (R. at 16).

As noted, a plaintiff's RFC is the most that a plaintiff can do despite her limitations. 20 C.F.R. § 416.945(a). When making an RFC determination, an ALJ is required to consider all evidence. *Burnett v. Comm'r of Soc. Sec. Admin*, 220 F.3d 112, 121 (3d Cir. 2000). An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." (*Id.*) In other words, an ALJ need not discuss "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions. *Jones*, 364 F.3d at 505.

Here, the medical record and opinions from Plaintiff's treating sources consists of the following: (1) treatment notes from May 2013 to March 2015 from Plaintiff's treating psychiatrist, Dr. Mayer; (2) two statements titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" (the "Statements")—one from Dr. Mayer and one from a licensed clinical social

6

worker, Ms. Kershner; (3) a one-page letter from Dr. Mayer in November 2017 (the "Letter"); and (4) consultative mental status examination reports from Dr. Iofin from January 2012 and Dr. Resnikoff in 2015.

The Third Circuit has provided the following guidance as to assessing the opinions of a treating source:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted). In cases involving a severe mental impairment, the Circuit has likewise noted "that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving mental disability." (*Id.* at 319).

Plaintiff first argues that the ALJ's decision does not reference the Letter from Dr. Mayer. (Pl.'s Br. at 23). The Letter states in full:

> Ms. Lazar is under my psychiatric care since May 13, 2013. Her diagnoses include Bipolar Disorder with Major Depression, Post Traumatic Stress Disorder as an abuse victim, and Borderline Personality Disorder. She is judged to have chronic mental illness at this time with persistent mood symptoms, agoraphobia, anxiety and a marked decrease in function. She is currently on medications including Lamictal, Topomax[sic], and Ativan. She has been decompensating psychiatrically over the past year despite treatment.

7

> *In my opinion she is currently unable to work and her everyday function is severely limited to her psychiatric symptoms.* I hope this information is helpful in your deliberations.

(R. at 458) (emphasis added).

In conceding that the ALJ did not mention the Letter in his analysis, the Commissioner avers that the omission amounts to harmless error because Plaintiff does not argue how this fact alone changes the outcome. (D.E. No. 15 ("Def's Br.") at 16–17). The Court agrees. Indeed, the ALJ found Dr. Mayer's treatment notes failed to "corroborate the opined deep functional erosions." (R. at 18). The ALJ further determined that Dr. Mayer's opinions amounted to conclusory statements because they lacked "clinical or laboratory" evidentiary support. (*Id.*) Furthermore, the single paragraph that represents the entirety of the Letter similarly lacks sufficient evidentiary support for its conclusions. Plaintiff does not show that the alleged error caused harm.

Next, Plaintiff points to the Statements from Dr. Mayer and Ms. Kershner. Both Statements indicated that Plaintiff exhibits "marked limitations" in several areas including her ability to interact with supervisors, deal with work pressures in a usual setting, and respond appropriately to changes in a routine work setting. (R. at 439–449). Both Statements also said that Plaintiff suffered marked limitations in her ability to make "simple work-related decisions" or "carry out detailed instructions." (*Id.*).

When choosing to accord the Statements little weight, ALJ Costa provided the following three reasons:

> First, the record[] reveals inconsistent treatment with Ms. Kershner and Dr. Mayer, as their treatment notes fail to corroborate the opined deep functional erosions. Second, these opinions are inconsistent with the mental status examinations throughout the record, which generally reveal no abnormalities. Third, the claimant retains the ability to work on college courses, watch television, go on the internet and maintain adequate social relationships (Exhibit 8F).

Due to the foregoing, I accord these opinions little weight.

(R. at 18.)

As to the other record evidence, the ALJ indicated that Plaintiff's treatment had been "essentially routine and/or conservative in nature." (*Id.*). He found that "the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, [] would not prevent [her] from engaging in the above residual functional capacity." (*Id.*). The ALJ also characterized the treatment Plaintiff received as "intermittent . . . under the care of Dr. Mayer from January 2014 to December 2014, and none thereafter." (*Id.*; R. at 419–32). Plaintiff objects to this characterization and argues that Dr. Mayer treated Plaintiff "for at least five years" from May 2013 through November 2017. (Pl.'s Br. at 23). However, in support of his view that the ALJ reasonably characterized Plaintiff's treatment as "intermittent" and "sparse," the Commissioner contends that there are no treatment notes beyond March 2015. (Def's Br. at 16). A review of the record confirms this. Beyond March 2015 there are no treatment records from Dr. Mayer or Ms. Kershner. After that date, Plaintiff only points to the Statements and the Letter.

The ALJ reviewed mental status examination reports from Dr. Iofin from January 2012 and Dr. Resnikoff in 2015, which "revealed no abnormalities in responding to simple numerical calculation, no issue in responding to problem solving tasks, the ability to perform on Serial Sevens and no issues with memory…revealed good general knowledge and good organization." (R. at 18–19). The Commissioner adds that state agency psychiatrist, Dr. Robert Campion, reviewed Plaintiff's file on reconsideration in October 2015 and concluded that the additional medical evidence—the Statements—provided "no substantive basis to revise the original assessment of Plaintiff's claims." (Def's Br. at 16 (citing R. at 93–103)).

The Court finds that the ALJ provided adequate support for discounting the Statements from

Dr. Mayer and Ms. Kershner. He explained why the clinical evidence supporting those opinions was insufficient and contradicted by her mental status examinations, her daily activities such as taking college courses, and her relatively "routine" and "conservative" treatment to control her mental impairments. (R. at 18). Thus, there was substantial evidence supporting the weight that ALJ accorded the treating sources' opinions.

### B. The ALJ's Consideration of Plaintiff's Subjective Complaints

According to Plaintiff, the ALJ did not give her testimony serious consideration. (Pl.'s Br. at 17, 19–20). She accuses the ALJ of using "boiler plate" language to "minimize her symptoms" and "[making] outright inventions." (*Id.* at 17–18). The Commissioner responds that the ALJ's consideration of Plaintiff's subjective complaints is supported by substantial evidence. (Def's Br. at 13–14).

An ALJ may determine the degree of credibility afforded to a claimant's alleged subjective symptoms and disabling impact. *See Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). At ALJ's evaluates "the credibility of a claimant … to arrive at an independent judgment in light of the medical findings and other evidence regarding the true extent of the pain alleged by the claimant." *Brown v. Schweiker,* 562 F.Supp 284, 287 (E.D. Pa. 1983) (quoting *Bolton v. Sec'y of HHS,* 504 F.Supp. 288, 291 (E.D.N.Y 1980)). When determining the extent to which alleged symptoms affect a claimant's ability to perform basic work activities, the ALJ considers whether inconsistencies exist "in the evidence and the extent to which there are any conflicts between" the claimant's statements and "the rest of the evidence." 20 C.F.R. § 404.1529(c)(4). An ALJ is required to give the claimant's testimony "serious consideration," state his reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d Cir. 2003). "The credibility determinations of an administrative judge are virtually

10

unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) (*quoting Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)). Generally, an ALJ's credibility determination is accorded great deference and will be left disturbed absent "inherently incredible or patently unreasonable" reasoning. *See Blue Ridge Erectors v. Occupational Safety & Health Review Comm'n*, 261 F. App'x 408, 410 (3d Cir. 2008); *St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005).

In this case, the ALJ began his analysis by acknowledging Plaintiff's complaints that she "is unable to perform work-related activities on a sustained basis due to mental impairments." (R. at 16). He found her statements "concerning the intensity, persistence and limiting effect of [her] symptoms not entirely consistent" with the medical record. (*Id.* at 17). He noted several records where Plaintiff described her symptoms to doctors. (*Id.*). Among the records that the ALJ considered was the consultative examination report from Dr. Iofin that noted Plaintiff's "hypo-manic presentation, sleep disturbance, irritability, reduced attention and concentration, anxiety with resultant panic attacks and feelings of hopelessness." (*Id.*). In that same report, the ALJ noted, Plaintiff "endorsed an absence of significant amount of symptoms with the exception of some paranoid ideations" which are "significant when [Plaintiff] is more depressed." (*Id.*).

The ALJ then compared Dr. Iofin's report to the second consultative examination with Dr. Resnikoff and found the two reports "consistent." (*Id.*). Both reports, the ALJ explained, revealed no abnormalities in performing several cognitive tasks, including simple numerical calculations, problem solving, and memory. (*Id.*). Despite her alleged disabling symptoms, the ALJ determined that the medical record showed "relatively infrequent trips to the doctor" and "generally successful" treatment to control her symptoms. (*Id.*). The Commissioner adds that "despite her extreme subjective complaints" there is no record of hospitalizations or emergency

room treatment for her complaints." (Def's Br. at 14).

Plaintiff makes bare—and seemingly contradictory—assertions that her testimony was not recited "in a neutral fashion, selected out of context" and accuses the ALJ of making "outright inventions." (R. at 19). Such assertions do not hold up under scrutiny. The ALJ gave Plaintiff's testimony serious consideration. He provided adequate reasons for discounting her subjective complaints and made specific findings. *See Rowan*, 67 F. App'x at 729. Accordingly, the Court rejects Plaintiff's argument.

### C. The Commissioner's Burden at Step Five

In making her step five argument, Plaintiff relies largely on her previous contention that the opinions from treating sources were uncontradicted. She claims the vocational expert's testimony "confirmed" that she is disabled and that the Commissioner failed to incorporate all her credibly established work-related limitations. (Pl.'s Br. at 29). Plaintiff points to testimony from the vocational expert who opined that no jobs existed in significant numbers if Plaintiff was limited to no interaction with coworkers, "was absent more than once per month," needed an extra fifteen-minute break, or "was off-task approximately 15% of the workday." (*Id.* at 30). The Commissioner asserts that the ALJ's decision at step five is supported by substantial evidence. (Def's Br. at 17–18).

The ALJ explained that he considered Plaintiff's "nonexertional limitations" and included those limitations in the RFC. (R. at 20). At the hearing, the ALJ's first hypothetical asked the vocation expert to consider the following:

> [An] . . . individual with the same age, education, and the past work experience as that of the claimant. For our first hypothetical to please assume that the individual would have no exertional limitations, but would have the following restrictions: they could have no exposure to extremes in environmental conditions or concentrative pulmonary irritants, they can only have occasional interaction with the general public, co-workers, and supervisors, and they would be able to

12

>understand, remember and carry out simple instructions, and would be able to make simple work-related decisions.

(R. at 55). The vocational expert responded that while Plaintiff could not perform her past work, she could perform other jobs that existed in significant numbers in the national economy despite the limitations imposed by the RFC. (R. at 55–56). The ALJ then presented other hypotheticals further limiting a person to no interaction with the public. (*Id.* at 56). The vocational expert responded that Plaintiff could still perform those unskilled jobs. (*Id.*).

When Plaintiff was further limited to no interaction with co-workers or supervisors and being off-task approximately 15% of a given workday, the vocational expert concluded no jobs existed that Plaintiff could perform. (*Id.* at 56–57). Plaintiff complains that those additional hypothetical limitations presented to the vocational expert were not included in the decisional RFC. (Pl.'s Br. at 30). However, this argument does not answer whether the ALJ excluded any RFC credibly established limitation from the hypothetical. The ALJ was entitled to present multiple hypotheticals. As long as the ALJ accurately portrayed all the medically established impairments and gives the vocational expert the opportunity to evaluate those impairments as it relates to Plaintiff's ability to perform work, the Commissioner's step five burden is met. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3rd Cir. 2005) (citations omitted).

There was substantial evidence to support the RFC and the hypothetical on which the ALJ relied. State agency medical experts, the Commissioner contends, determined that Plaintiff could "perform basic tasks; sustain concentration, persistence, and pace; and relate and adapt to supportive work-like settings." (Def's Br. at 18 (citing R. at 68–73 & 93–103)). The ALJ considered Plaintiff's age, education, and work experience in combination with her medically established impairments and concluded that Plaintiff could make "a successful adjustment" to perform other unskilled work. (R.

at 19–20). Those unskilled positions included Inspector and Hand Packager, Photocopying Machine Operator, and Sealing and Cancelling Machine Operator. (*Id.* at 20). The ALJ considered Plaintiff's schizoaffective disorder, anxiety, and panic attacks and limited her to no interaction with the general public. (*Id.* at 14 & 17). The ALJ attributed to Plaintiff a moderate limitation in interacting with others. (R. at 15). Plaintiff's mental status examinations, the ALJ found, revealed an "adequate thought process, full orientation, adequate impulse control, satisfactory performance on a cognitive examination with no signs of hallucinations." (*Id.* at 17). As previously addressed, Plaintiff failed to prove that the RFC was not supported by substantial evidence. Also, Plaintiff points to no credibly established impairments from the decisional RFC that were left out of the hypothetical. Accordingly, the Commissioner's finding is supported by substantial evidence and is affirmed.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. An appropriate Order accompanies this Opinion.

Dated: March 10, 2021

*s/Esther Salas*
**Esther Salas, U.S.D.J.**